UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD MARX,

       Plaintiff,                               Hon. Paul L. Maloney

v.                                                    Case No. 1:18-cv-1151

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

**STANDARD OF REVIEW**

       The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of

judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)

(citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## BACKGROUND

Plaintiff was 47 years of age on his alleged disability onset date. (ECF No. 7-5, PageID.279). He successfully completed high school and worked previously as a retail manager, assistant manager, production welder, fire watch member, laborer, and sales route driver. (Op., 10-11, PageID.46-47). Plaintiff applied for benefits on August 21, 2015, alleging that he had been disabled since May 20, 2014. His claimed impairments include a narrowing of the spine, degenerative arthritis of the lumbar spine, lower back pain, leg pain, lumbar nerve root disorder, muscle inflammation, obesity, attention deficit disorder, major depressive disorder, intermittent explosive disorder, and sleep apnea. (ECF No. 7-5, 7-6, PageID.279-95, 333).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 7-3, 7-4, PageID.107-277). On April 12, 2018, Plaintiff appeared before ALJ James Kent, with testimony being offered by Plaintiff and a vocational expert. (ECF No. 7-2, PageID.55-89). In a written decision dated May 14, 2018, the ALJ determined that Plaintiff was not disabled. (Op., PageID.37-48). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (ECF

No. 7-2, PageID.23-28). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders. He can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) affective disorder (depression); (2) intermittent explosive disorder; (3) degenerative disc disease; and (4) obesity. These impairments failed to satisfy the requirements of the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Op., 3-7, PageID.39-43).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can occasionally climb ramps and stairs, but can never climb ladders; (2) he can occasionally balance, stoop, kneel, crouch, and crawl; (3) he can only occasionally be exposed to hazards such as unprotected heights and moving machinery; (4) he uses a cane occasionally to ambulate and balance, rotating it hand-to-hand and is right-hand dominant; (5) his cognitive abilities are adequate for a variety of unskilled, semi-skilled, and skilled vocational tasks, such as those found in assembly, manufacturing, service, or maintenance organizations; (6) he is capable of understanding and implementing moderately complex instructions; and (7) he can have occasional contact with the public and co-workers. (Op., PageID.43).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this

issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert. The vocational expert testified that there existed approximately 335,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (ECF No. 7-2, PageID.80-83). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The vocational expert also testified that if Plaintiff were further limited in that he also required a sit-stand option, there still existed approximately 140,000 jobs which he could perform. (*Id*, PageID.83).

**I.       Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contains copies of medical treatment records and statements by Plaintiff. The ALJ described this evidence as follows:

> Deaconess Clinic was the claimant's primary care clinic. He was treated for acute illnesses, back pain, and depression. In January 2015, clinician noted that the claimant's lumbar back exhibited tenderness and spasm. In April 2015, a magnetic resonance imaging (MRI) of the lumbar spine (compared to March 2009 MRI) revealed interval development of fairly severe facet arthropathy on the left at L5-S1 combined with disc-osteophyte complex caused some new moderate to severe, left greater than right, foraminal narrowing; right paracentral disc protrusion seen on the prior exam at L5-SI had actually improved; and mild diffuse disc-osteophyte complexes throughout the remainder of the upper lumbar spine. The claimant was treated with medication (Exhibits 1F, 3F, 6F, 10F, 11F, and 14F).
>
> The claimant underwent a psychiatric evaluation on January 23, 2015, which was performed by Charles Rhoton, M.D. of Deaconess Health System. The claimant reported anger issues, depressive symptoms and chronic pain. Dr. Rhoton stated that the claimant's weight was 272 pounds. He noted that the claimant's mood was dysthymic and affect was irritable. The claimant was diagnosed with major depressive disorder moderate with anxious features and irritability and intermittent explosive disorder. The claimant participated in medication reviews, group therapy for anger management, and individual therapy. His medication included Effexor, Wellbutrin and Depakote (Exhibits 2F, 8F, and 15F).
>
> In October 2015, the claimant was referred for a consultative evaluation by the Administration, which was performed by Amanda Stram, M.D. The claimant reported lower back pain. Dr. Stram noted that the claimant's height was 5'6", weight was 250 pounds and BMI was 42.7. She stated that the claimant had slower gait and was forward leaning on ambulation. Dr. Stram reported that the claimant was uncomfortable and shifting during their conversation while in the seated position. She noted that the claimant had significant cervical and lumbosacral spinal tenderness, pain when flexing his bilateral hips in a seated position, and decreased patellar reflexes bilaterally. Dr. Stram stated that the

claimant was able to perform a heel to toe walk, however, did have significant imbalance (Exhibit 4F).

In February 2016, the claimant was referred for a psychological consultative evaluation by the Administration, which was performed by Albert Fink Ph.D., a licensed psychologist. The claimant reported history of alcohol abuse but quit six months ago and anger issues. Dr. Fink noted that the claimant came slowly into the interview room, with somewhat awkward ambulation and making use of a cane. He stated that the claimant's mood was mildly dysphoric, affect was somewhat constricted, and speech was vigorous, logical and sequential with no evidence of unusual thought processes. Dr. Stram noted that the claimant had no difficulty with proverb interpretation or similarities/differences. He called six digits forward and three digits backward. The claimant was diagnosed with intermittent explosive disorder and alcohol use disorder, in early partial remission (Exhibit 12F).

Jonathan Kahn, M.D. evaluated the claimant in March 2016, per the request of the Administration. Dr. Kahn noted that the claimant's height was 5'6", weight was 275 pounds and BMI was 44.3. He stated that deep tendon reflexes were 2+/4+ patellar, right biceps; 1+/4+ right Achilles; 0+/4+ left Achilles and biceps. Dr. Kahn reported that fine motor dexterity, including pickup and handling of coins, was decreased on right 3rd through 5th digits; posture appeared to have mild cervical and thoracic kyphosis; gait had limp favoring left lower extremity without assistive device; and cervical and lumbar spine, knees and hips had decreased range of motion. He stated that the claimant had tenderness to lumbar spine and right knee and had positive bilateral straight leg raise at 45 degrees. X-rays of the lumbar spine revealed mild to moderate facet joint arthropathy and degenerative disc space narrowing at L5-S1. Dr. Kahn noted that the cane or walker appeared to be medically necessary (Exhibit 13F).

In May 2017, an MRI of the left shoulder revealed full-thickness tear involving the midportion of the subscapularis tendons, portions of the extreme superior and inferior margins of the tendon that remain intact; associated tear of the extreme anterior margin of the supraspinatus tendon; moderate joint effusion; and long head of the biceps tendon tear. The claimant underwent left shoulder arthroscopy with arthroscopic subacromial decompression, subscapularis rotator cuff tear debridement with subsequent mini-open supraspinatus rotator cuff tear repair in July 2017. His postoperative diagnosis was full thickness

supraspinatus rotator cuff tear with minimal retraction, previous biceps tendon tear, middle two-thirds subscapularis rotator cuff tear, irreparable (Exhibit 16F).

On September 20, 2017, the claimant established care at Ionia Family Medicine. The claimant was treated for acute illnesses, back pain and depression. On September 20, 2017, clinician noted that the claimant's height was 67 inches, weight was 258 pounds 12.8 ounces and BMI was 40.53. He stated that the claimant had decreased range of motion, tenderness and pain of lumbar back. The claimant was treated with medication (Exhibit 18F).

In October 2017, an MRI of the lumbar spine revealed grade 1 anterolisthesis of L5 on S1 by approximately 4 mm due to fac[e]t arthropathy, mild central disc resulting in mild spinal stenosis; prominent foraminal narrowing bilaterally at LS-S1 level due to the anterolisthesis and bulging disc material, compromise raising L5 nerve roots is suspected; mild central disc bugle at the L4- L5 level resulting in mild spinal stenosis bilaterally; central disc bulge at T12 a[nd] S1 level producing borderline spinal stenosis; and mild spinal stenosis at L1-L2, L2-L3 and L3-L4 levels due to congenitally [narrow] canal (Exhibit 19F).

John Keller M.D., a neurosurgeon, evaluated the claimant on February 1, 2018. The claimant reported back pain and numbness and tingling in his legs. Dr. Keller noted that the claimant's height was 5'7", weight was 254 pounds 3.2 ounces, and BMI was 39.81. Dr. Keller noted that bilateral gastrocnemius strength was 4-/5. The claimant was diagnosed with acquired spondylolisthesis of lumbosacral region and lumbar radiculopathy. The claimant was offered surgery, which was scheduled pending medical clearance (Exhibit 19F).

(Op., 3-4, PageID.39-41).

## II.     Listing of Impairments – Section 1.04

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that the

ALJ incorrectly determined that he did not meet the requirements of Section 1.04 of the Listings.

Plaintiff bears the burden to demonstrate that he satisfies the requirements of a listed impairment. *See Malone v. Comm'r of Soc. Sec.,* 507 Fed. Appx. 470, 472 (6th Cir., Nov. 29, 2012). An impairment satisfies a listing, however, "only when it manifests the specific findings described in all of the medical criteria for that particular impairment." *Lambert v. Commissioner of Social Security*, 2013 WL 5375298 at *8 (W.D. Mich., Sept. 25, 2013) (citing 20 C.F.R. §§ 404.1525(d) and 416.925(d)). As the evidence reveals, however, Plaintiff cannot meet his burden.

Plaintiff argues that he meets subsection A of Section 1.04. Specifically, Plaintiff argues that the ALJ "erred in concluding there were no signs of nerve root compression injury." (ECF No. 12, PageID.873). Plaintiff fails, however, to identify any record evidence that he suffers from nerve root compression. Instead, Plaintiff argues that because sciatica and radicular pain, from which he does suffer, "relate to" or "involve" nerve roots, the Listing is satisfied. Plaintiff has identified no authority in support of this argument.

The Listing by its very terms is not satisfied by pain that involves or relates to the nerve roots, but instead requires evidence of nerve root *compression*. Because Plaintiff has identified no evidence that he suffers from nerve root compression, this argument is rejected.[1]

---

[1] Plaintiff also argues that the ALJ "wrongfully conclude[d] there is no limitation of motion of the spine or sensory or reflex abnormalities." (ECF No. 12, PageID.873).

### III.      Medical Opinion Evidence

On December 13, 2017, Dr. Michael Myers, one of Plaintiff's treating physicians, completed a form concerning Plaintiff's ability to perform physical activities. (ECF No. 7-8, PageID.769-72). As detailed below, Dr. Myers opined that Plaintiff is impaired to a greater extent than the ALJ recognized in his RFC assessment. The ALJ, however, afforded "very little weight" to Dr. Myers' opinions. Plaintiff argues that he is entitled to relief on the ground that the ALJ "wrongfully refused to consider" Dr. Myers' opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ

---

As subsection (A) of the Listing makes clear, consideration of these matters is only necessary if the claimant is first determined to experience nerve root compression. As Plaintiff cannot make this showing, the Court need not consider this argument.

may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ gives less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded it. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant

factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

With respect to Plaintiff's ability to function, Dr. Myers identified the following limitations: (1) during an eight-hour workday, Plaintiff can sit for thirty minutes, but cannot stand or walk for any amount of time; (2) Plaintiff can occasionally lift twenty pounds and carry ten pounds; (3) Plaintiff is completely unable to perform most activities with his left upper extremity; (4) Plaintiff can "never" bend, twist, squat, crawl, or stoop; (5) Plaintiff will experience "excessive absences" from work; (6) Plaintiff needs to recline with his legs elevated; and (7) Plaintiff must use the bathroom three to four times hourly. (*Id.*, PageID.769-72).

In support of his decision to afford "very little weight" to Dr. Myers' opinions, the ALJ stated:

> I give this opinion very little weight as it is not supported by the record as a whole. For instance, the claimant walked into the hearing room. He agreed at the hearing that Dr. Myers was exaggerating when the Dr. stated in 17F he could never stand, never walk, and only sit ½ in an 8 hour day. In February 2018, Dr. Keller noted that the claimant had normal gait, normal strength throughout, intact sensation, normal gait and negative bilateral straight leg raise (Exhibit 19F). In addition, as noted above, claimant testified at trial he could sit 8 hours and would walk and stand 4 [hours] in a 12 hour workday. He indicated that in his most current job he would not elevate his legs during the 8 hour work day, but would wait until he returned home to do so.

(Op., 9-10, PageID.45-46).

Plaintiff has failed to identify any error in the ALJ's analysis. While Plaintiff is correct that the record contains evidence that arguably supports Dr. Myers' opinions, it is almost always the case that a treating physician's opinion is supported by something in the record. But rather than identify any shortcomings in the ALJ's assessment of Dr. Myers' opinion, Plaintiff merely invites the Court to re-weigh the evidence, which it simply cannot do. In sum, the ALJ articulated sufficient reasons, supported by substantial evidence, to discount Dr. Myers' opinions. Accordingly, this argument is rejected.

## IV.        Medical-Vocational Guidelines

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that, "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the rules correlating to a finding of disability. *See, e.g., Branon v. Commissioner of Social Security*, 539 F. App'x 675, 679 (6th Cir., Oct. 2, 2013).

Plaintiff argues that he is entitled to benefits pursuant to rules 201.09 through 201.12 of the grids. These particular rules, however, apply only to claimants who

are limited to sedentary work. As discussed above, the ALJ found that Plaintiff could perform a limited range of light work. Plaintiff's argument that he is, in fact, limited to sedentary work is insufficiently developed and, again, is nothing more than an invitation for the Court to re-weigh the evidence which it cannot do. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

Dated: August 12, 2019           /s/   Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. ⁋ 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a forfeiture of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).